IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

VERNON P. THOMAS,

                    Petitioner,


          vs.                                    Case No. 02-3217-JTM


MICHAEL A. NELSON, *et. al.*,

                    Respondents.


MEMORANDUM AND ORDER

          Petitioner filed a habeas corpus action on July 19, 2002 pursuant to 28 U.S.C. § 2254.

This court denied the petition without an evidentiary hearing.  The Tenth Circuit Court of

Appeals reversed and remanded the action for an evidentiary hearing.  After a hearing held on

July 24, 2006, followed by closing arguments held on April 30, 2007, the court grants

petitioner's writ of habeas corpus for the following reasons.

*I.  Factual Background*:

          On December 22, 1992, a man entered the home of Fredrick and Thelma Haskard in

Wichita, Kansas, confined them, and stole portions of their property ("Haskard Kidnapping").

Thereafter, on January 16, 1993, a man broke into the home of William Racer in Wichita,

confined him, and stole portions of his property ("Racer Kidnapping").  On March 25, 1994,

someone entered Luevina Braley's home in Wichita and stole her television ("Braley Burglary

Case").  Petitioner was arrested on March 25, 1994 and booked into the Sedgwick County jail for

the Braley Burglary Case.  For that charge, he remained in jail for more than a month before his release on bond.

On April 17, 1994, a snowblower was stolen from Ernest Drowatzky ("Drowatzky Theft").  On June 16, 1994, lawn tools, including a lawnmower, were stolen from Ester Phares ("Phares Theft").  On July 2, 1994, someone broke into Mary Kindred's home in Wichita and stole several items of her property, including a video cassette recorder, a computer, and a printer ("Kindred Burglary").

A.  The Braley Burglary Case:

Petitioner was charged with the Braley Burglary in the Sedgwick County, Kansas, District Court in *State v. Thomas*, Case No. 94-CR-523, on March 28, 1994, which included two counts: burglary (severity level 7 person felony) and theft (class A misdemeanor).  The district court appointed Daniel H. Phillips, a Wichita Attorney, to represent petitioner in the Braley Burglary Case.

One month after the court appointed Mr. Phillips to represent petitioner, petitioner spoke with Phillips at petitioner's preliminary hearing.  After a 15 to 20 minute discussion, petitioner waived his preliminary hearing and pled "not guilty" for the Braley Burglary.

The prosecution file in the Braley Burglary includes a Criminal History Worksheet with petitioner's National Crime Information Center criminal history and a Criminal History Sheet.  Petitioner's Exh. 47A, 47B.  Mr. Phillips received the Criminal History Worksheet on May 12, 1994.

The Assistant District Attorney Christopher McMullin informed Mr. Phillips in writing that he believed, subject to confirmation, that petitioner was in Criminal History Category C,

2

which requires conviction of two prior felony convictions, including a one person felony

conviction and a one non-person felony conviction.

At the June 12, 1994 pretrial conference, Mr. Phillips did not appear.  Ronald Lyon,

another attorney, appeared in Phillips' place.  There is no indication as to why Mr. Phillips did

not appear on June 12, 1994.  Petitioner's Exh. 4.

Thereafter, following the conference, petitioner reached Mr. Phillips by telephone in

early August.  At that time, Mr. Phillips communicated to petitioner that the prosecutor offered a

recommendation for probation in exchange for a guilty plea.  Petitioner agreed to accept the

offer.

On August 11, 1994, petitioner appeared in court with Mr. Phillips and changed his plea

for the Braley Burglary.  Petitioner's Exh. 5.  In exchange for the plea, the prosecution agreed:

"Upon successful plea of guilty as charged State recommends concurrent medium range sentence

and probation it is presumed from Defendant's prior."  Petitioner's Exh. 6.  The term "prior" is

used by prosecutors and defense attorneys to refer to a "prior conviction."  Since the Kansas

Sentencing Guidelines Act controlled sentencing in the Braley Burglary Case, the agreement was

consistent with the sentencing guidelines.

In 1994, probation was the presumed disposition for a severity level 7 felony when a

defendant fell into criminal history category C, the category noted on the Criminal History

Sheet signed by McMullin and delivered to Phillips on May 12.

B.  The Kidnapping Case No. 94-CR-1307:

On August 12, 1994, the day after petitioner's change of plea hearing in Case No. 94-CR-

523, petitioner was charged in the Sedgwick County District Court with ten new offenses based

3

on the Haskard Kidnapping, the Racer Kidnapping, the Phares Theft, the Drowatsky Theft, and the Kindred Burglary. *State v. Thomas*, Case No. 94-CR-1307 ("the Kidnapping Case"). Petitioner's Exh. 9.  For the Haskard Kidnapping, petitioner was charged with aggravated burglary (class C felony), two counts of kidnapping (class B felonies), and robbery (class C felony).  For the Racer Kidnapping, petitioner was charged with aggravated burglary (class C felony), kidnapping (class B felony), and robbery (class C felony).  These offenses were committed prior to July 1, 1993. As such, petitioner was subject to sentencing on conviction under the indeterminate sentencing system applicable to offenses committed prior to July 1, 1993.

For the Phares Theft, petitioner was charged with felony theft by receiving stolen property (severity level 9 non-person felony).  For the Drowatzky Theft, petitioner was charged with misdemeanor theft. For the Kindred Burglary, he was charged with burglary (severity level 7 person felony) and with theft (severity level 9 non-person felony).  These offenses occurred after July 1, 1991, therefore, petitioner was subject to sentencing under the determinate sentencing system enacted by the Kansas Sentencing Guidelines Act ("KSGA").

On August 17, 1994, the court appointed Phillips to represent petitioner in the Kidnapping Case.  At that time, McMullin and Phillips discussed the availability of the Kansas Habitual Criminal Act in sentencing petitioner for the Haskard Kidnapping and the Racer Kidnapping under the pre-July 1, 1993 indeterminate sentencing system.  Specifically, in late August, 1994, the Kidnapping Case was assigned to McMullin. On August 22, he made his first handwritten notes in the case file on a form entitled "Case Notes."  His notes included the following: "Also look at M2 [motion to] impose Habitual Criminal Act since major person

4

crimes were pre-guidelines K.S.A. § 21-4504." In making the notes, McMullin was referring to

the Haskard Kidnapping and the Racer Kidnapping.  "Pre-guidelines" refers to the sentencing

guidelines enacted by the KSGA.  Petitioner's Exh. 46A; McMullin Depo., pp. 9-10.

After examining the prosecution file in the Kidnapping Case, it is clear that McMullin

considered sentencing petitioner under the Habitual Criminal Act.  The prosecution file in the

Kidnapping Case contains a "Criminal History Worksheet" dated August 17, 1994, five days

before McMullin made his note about looking at a motion to "impose Habitual Criminal Act."

The first page of the "Criminal History Worksheet" refers to the Braley Burglary Case: "Crim

history should be in 94CR 523." Petitioner's Exh. 46B.  The petitioner's criminal history

information contained in the prosecution's file on the Braley Burglary Case reflects that

petitioner had two prior felonies.  Also attached to the worksheet in the Kidnapping case was

petitioner's criminal history record from the Federal Bureau of Investigation.  The criminal

history record included twenty-one entries for a total of eight pages.

On August 25, 1994, Mr. Phillips initiated a conversation with Mr. McMullin about a

plea by petitioner.  According to McMullin's handwritten notes, Phillips asked him for plea

terms before the preliminary hearing which was scheduled for the following day.  After speaking

with the case detective and the Haskards, McMullin communicated a proposal for a plea

agreement to Phillips.  The proposal, as recorded in McMullin's notes, was " . . . for PGAC, no

prelim, motion trial, we recc. 15-Life controlling term. I won't enhance, bitch, depart, etc."

Petitioner's Exh. 56A.  According to McMullin, those notes translate as follows: "If petitioner

pleads guilty as charged, waives preliminary hearing, motions, and trial, the State will

recommend a controlling sentence of not less than 15 years nor more than life in prison, and the

State will not seek any enhancement of the sentence, will not request that the sentence by imposed under the Habitual Criminal Act, and will not ask for an upward departure under the KSGA.  The term "bitch" means the "Kansas Habitual Criminal Act."  McMullin Depo., pp. 13-15; Hearing Transcript, pg. 24.

On August 26, 1994, petitioner appeared in court with Phillips on the Kidnapping Case and waived his right to a preliminary hearing. Petitioner pled not guilty and requested a jury trial. The pretrial conference was scheduled for September 8 and the jury trial for October 24. According to McMullin's contemporaneous handwritten notes, when the Kidnapping Case was called for preliminary hearing on August 26, Phillips told him that petitioner accepted the plea offer made by McMullin the day before.  Petitioner's Exh. 46A; McMullin Depo., pp. 14-15.

Petitioner recalls that he asked the judge presiding at the preliminary hearing docket for a different lawyer to represent him. The judge cut petitioner off and said, "We are not here to discuss removal of an attorney.  This is a preliminary hearing, and that's what we are going to take up today." Hearing Transcript, pg. 60.

On September 8, 1994, a few days after petitioner waived a preliminary hearing, the pretrial conference for the Kidnapping Case was held.  The record of the Kidnapping Case does not show whether Phillips, or any other attorney, appeared for petitioner at the pretrial conference.  A pretrial conference order was signed by McMullin and Judge Paul Clark, the Presiding Judge of the District Court's Criminal Department.  McMullin noted on the pretrial conference order that the anticipated disposition of the case was "Plea." This is consistent with McMullin's August 26 notes.  In completing the pretrial conference order form, however, McMullin indicated the motions he anticipated filing in the case.  In that order, McMullin

6

indicated in writing for the third time that sentencing petitioner under the Habitual Criminal Act was a possibility.  As part of the order, McMullin informed Judge Clark that he anticipated filing a motion to impose sentence on petitioner under the Habitual Criminal Act.  Petitioner's Exh. 12. McMullin noted this motion so that he would not be precluded from filing it in the future if needed. McMullin Depo., pp. 15-19.

Although McMullin's handwritten notes indicate that September 21, 1994 was the scheduled date for petitioner to change his plea to "guilty" in the Kidnapping Case, petitioner did not plead "guilty" on that date and the trial did not commence until November 14, 1994 before District Judge Rebecca Pilshaw.

Prior to that time, petitioner's wife made several telephone calls to Phillips to make an appointment to bring an alibi witness to his office to be interviewed by Phillips. When petitioner's wife and the witness went to Phillips' office, Phillips was not there.  Petitioner's wife was not able to again contact Phillips.  She did see Phillips the morning of November 14, 1994, when she came to the courthouse to attend what she thought was to be the sentencing of petitioner in the Braley Burglary Case.  When she arrived, she learned that the Kidnapping Case was for trial docket before Judge Pilshaw.

The first matter to be taken up by Judge Pilshaw that morning was a request by petitioner for appointment of a different attorney to represent him. When asked by Judge Pilshaw why he wanted a new attorney, petitioner said:

> THE DEFENDANT: For what reason? Your Honor, because this attorney I have been appointed -- we have not got along since the day he was appointed to me. He has hisself (sic) specified that he feels himself that I am guilty of this crime, and I refuse to go to trial with him.

Petitioner's Exh. 43, pp. 2-3.  Judge Pilshaw replied: "Not getting along with your attorney is not

a reason to change lawyers." Petitioner's Exh. 43, at pg. 3.  Petitioner then told Judge Pilshaw

that he was not aware the Kidnapping Case was scheduled for trial that day; he thought he was

on the docket to be sentenced in the Burglary case.  Petitioner's Exh. 43, pp. 4-5.  Petitioner's

statement was followed by a lengthy recitation by Phillips of events leading to that day and of

certain communications he had with petitioner.  Among other things, Phillips disclosed that

petitioner had told Phillips some weeks or months earlier that he wanted Phillips removed as his

attorney in the Kidnapping Case.  This happened at the time petitioner was scheduled to waive

jury trial pursuant to a plea agreement.  From the holding cell by the courtroom, petitioner told

Phillips he did not want to go forward with the plea agreement in the Kidnapping Case and

wanted a jury trial.  Phillips told Judge Clark, the Presiding Judge of the Criminal Department,

about petitioner's request and Judge Clark did not conduct a hearing on that request and "did not

have any occasions to speak with" petitioner about it:

> MR. PHILLIPS: And in addressing the Court, Mr. Thomas, I would
> like to have your silence and allow you to respond when I'm finished.
> If you'd have a seat I'd appreciate it.  Your Honor, I was initially
> appointed some time ago to represent Mr. Thomas on a
> burglary/theft. I represented him on that burglary and theft and
> worked out a plea agreement where there was a recommendation of
> probation. During the course of that case there were no complaints
> whatsoever by Mr. Thomas as it relates to my representation of him.
> And I'm pointing out a number of things because I think today and
> now at this time it's very important that a record be made so that there
> is some accuracy or some reflection of my opinion of these events so
> –
>
> MR. PHILLIPS: as it relates to that, and if the Court will bear with
> me. During the course of this case, there was at or about the time of
> the preliminary hearing in 94 CR 1307 a plea agreement worked out.
> Since Your Honor is the presiding judge in what's anticipated to be
> a jury trial, I think it's fair for all parties that I share those events with

8

you since you will not be making a determination of guilt or innocence. That document was executed by my client. It was not filed, and it was anticipated with the prosecutor, with my client and myself that a plea would be made at a later time.

THE COURT: Are you saying that Mr. Thomas signed the plea agreement?

MR. PHILLIPS: I am saying that.

MR. McMULLIN: (Nods head.)

MR. PHILLIPS: And it was anticipated at a later time a plea would be entered before Judge Clark. My client wanted to exercise to some degree some forum shopping, and I had no problems with that and I even suggested the same. However, sometime later and at about or just prior to the time that he was scheduled to waive his jury trial, he did make verbal complaints from his cell, his holding cell that he did not want to plead to these cases, that he did want to try these cases and that he wanted to remove me as an attorney.

THE COURT: To whom did he make these statements?

MR. PHILLIPS: He made those statements to myself. I shared those statements with Judge Clark. Judge Clark did not hold a formal hearing, did not have any occasions to speak with my client, and ordered that this matter be continued for a specific date for a jury trial. Now, I want to point out a few other things. During the course of that time, a period of four to six weeks, my client pro se on his own has failed to file any motions with the Court asking that I be removed as his attorney. He has had ample time to do such. I want to continue. I have given my client advice as it relates to the counts in this case. I have given him a number of various options and I have given those to him repeatedly; but more than anything, I have said this to him: This is a case that involves your personal freedom and your guilt and innocence. It is not a decision that I will make as it relates to whether or not you have a jury trial. It is solely your decision. And that's why we stand here today. It is his decision. Now, I have advised him as to a number of options that he can exercise, and some I consider to be diplomatic options as it relates to plea agreement and argument to the Court as it relates to what he might want to do if he pleads and there is a sentencing. he knows what those are, and I shared those with him as late as last night at 8 o'clock. Now –

9

THE COURT: You were visiting with him?

MR. PHILLIPS: In the jail last night.

THE COURT: On a Sunday night?

MR. PHILLIPS: Yes, on a Sunday night. Now in the course of this last week I've met with him approximately four times. We have gone over a number of things, and specifically we've gone over all the police reports page by page, and we have discussed at length his anticipated defense on each and every count. We have done it with his full knowledge that I have communicated to him time after time that his jury trial begins today, and I will make -- I want to make two points that he knows and that I know his jury trial began today. I had told him that he was scheduled to be sentenced a couple weeks ago, and he knows that we moved it over to coincide with this case so we could run the cases together. That per chance if he were to be found not guilty on one or more or all of the cases in 1307 that there would be some necessity to try and modify his sentence if he was already sentenced on this earlier case, because it would have a crucial effect and impact.  Now, we talked last night about his sentencing; and I said, Yes, it is scheduled for today along with your jury trial, but it will probably work along until the conclusion of what's anticipated to be a seven- to ten-day jury trial. So I'm telling you I believe in my own heart and mind that he knows full well what we're doing. And he can shake his head –

THE DEFENDANT: That ain't what was told to me.

MR. PHILLIPS: Wait a minute. You're going to get your chance.

THE COURT: Your lawyer is talking.

MR. PHILLIPS: You're going to get your chance. Now, his wife was -- I had communicated with her. And I don't know Ms. Ware that well, and I'm going to give her the benefit of the doubt that per chance she thought it was 8 o'clock this morning that we were to meet.  I met my client in the jail last night, and I said to him -- he said, I've talked to my wife and she thinks that you're supposed to meet with her tomorrow morning at 8 o'clock. And he himself said, Gosh, I thought that was kind of strange because we're meeting at 9 o'clock. And I said it's all right if she and I meet this morning or over the next three or four days because any testimony that she is going to give in this trial isn't going to come right out of the block; it's going

to come a little bit later down the road.  So I think the court knows my position on this. I am ready to go to trial today. And I feel like I have worked with my client in preparing this matter for trial. He has his clothes available here. Yes, we have had differences of opinion, and we may have had some conflicts in personality.  I have never considered them to be so overwhelming that I thought on my own initiative I needed to file a motion to withdraw from this case.  And I might also point out that I represented this defendant in a prior case that is still scheduled for sentencing. There have been no motions filed on his part. He has entered a plea in that case. He has been questioned at length as to whether or not he was satisfied or dissatisfied at his plea with his attorney, and I think all those were responses to the negative as it related to whether or not he had any complaints.

Petitioner's Exh. 43, pp. 5-10.  Judge Pilshaw found that petitioner knew or should have known that the Kidnapping Case was scheduled for trial that day, and she refused to remove Phillips as petitioner's lawyer.  Petitioner's Exh. 43, pg. 16.

Following her ruling, Judge Pilshaw permitted Phillips to speak with petitioner in the jury room.  Petitioner told Phillips in the jury room that he was not going to take the plea offer. Phillips left the jury room and returned with a "fingerprint card" with the name William Racer on it.  Phillips showed petitioner the card and told him, "With these fingerprints they are going to find you guilty and also the state is going to request that you be sentenced under the Habitual Criminal Act." Hearing Transcript, pg. 64.  The "fingerprint card" was actually the Wichita Police Department evidence receipt for seven latent partial fingerprint lifts in the Racer Kidnapping case.  Petitioner later learned that those latent lifts were examined earlier and they did not match petitioner's fingerprints. Phillips also told petitioner that he was facing three sentences of 15 years to life for each of three kidnapping charges that could be ordered served consecutively and then doubled or tripled under the Habitual Criminal Act for a total sentence of 90 years to life or 135 years to life.  Hearing Transcript., pg. 66.

11

When petitioner said he had no prior felony convictions, Phillips told him that Mr.

McMullin said petitioner had a prior robbery conviction:

> Q. Did you have any prior felony convictions?
>
> A. Not to my knowledge, other than what I had pled to in Case Number 523.
>
> Q. Did you tell Mr. Phillips that?
>
> A. Yes, I told him that.
>
> Q. How did he respond?
>
> A. He told me that the state attorney, Christopher McMullen (sic), had told him that I had a prior robbery conviction in New York City and they was going to use that. I tried to tell him I did not have a prior robbery conviction in New York.
>
> Q. What did he say about the felony in 523 that you had pled guilty to?
>
> A. He said they would use that too.
>
> Q. Okay. When you said you didn't have a robbery conviction in New York, even though Mr. McMullen (sic) said that, what did he say to you.
>
> A. He said that Chris McMullen (sic) had no reason to lie to him about what my prior convictions was.

Hearing Transcript., pp. 66-67.

Phillips told petitioner that he had to call him between 9:00 and 9:30 p.m. that night to say whether petitioner would plead guilty. Although petitioner knew he did not have a prior robbery conviction in New York City, he also knew he had pled guilty to a felony in the Braley Burglary Case. He believed that felony could be used to sentence him under the Habitual Criminal Act due to Phillips' remarks.

12

Phillips spoke with petitioner's wife after Judge Pilshaw refused to remove Phillips from the case. Phillips told petitioner's wife that she needed to convince petitioner to accept the prosecution's plea offer or petitioner was going to get a long sentence under the Habitual Criminal Act.

A jury was selected in the Kidnapping Case on the opening day of the trial.  Due to petitioner's unsuccessful efforts to remove Phillips as his lawyer and his recent conversation with Phillips regarding a sentence under the Habitual Criminal Act, petitioner telephoned Phillips from the jail about 9:15 that night and told him that he would accept the plea.  Hearing Transcript, pg. 68.

Before the trial resumed the following morning, Phillips and McMullin met with Judge Pilshaw in chambers to advise her that petitioner had decided to change his plea to guilty pursuant to a plea agreement.  One of the points made either by McMullin or Phillips in that off-the-record meeting with Judge Pilshaw was that the prosecution would not be asking that petitioner be sentenced under the Kansas Habitual Criminal Act.  McMullin Depo., pp. 21-24. When Judge Pilshaw convened court that morning, she stated that she was advised of petitioner's wish to enter a guilty plea pursuant to plea negotiations.  Petitioner's Exh. 44, pg. 2.  Petitioner agreed. He confirmed that he understood the charges and that he had signed and read the "Defendant's Acknowledgment of Rights and Entry of Plea" form presented to the court Petitioner's Exh. 14; Petitioner's Exh. 44, pp. 5-7.  After reviewing his rights and the potential sentences with petitioner, Judge Pilshaw inquired about petitioner's plea agreement with the prosecution:

> THE COURT: The plea negotiations in this case are as follows: In exchange for a plea of guilty as charged, the State will recommend

the controlling sentence of 15 years to life in prison. The defendant will provide a detailed factual basis for each count charged. The detailed sentence recommendation for each count is as follows: One, on the aggravated burglary, five to 20. Two and three, kidnapping, 15 to life. Four, robbery, five to 20. Five, aggravated burglary, again, five to 20. Six, robbery, five to 20. Seven, kidnapping, 15 to life. Eight, theft, top guidelines. Nine, theft, one year. Ten, burglary, top guidelines. Eleven, theft, top guidelines. The State will argue actively and completely for imposition of this sentence and oppose reduction now or at a modification hearing. Additionally, the State will oppose any reduction of sentence at any future hearing. This sentence to run consecutive to 94 CR 523. The defendant will argue for a lesser sentence. Mr. Phillips, Mr. McMullin is that your understanding of the plea negotiations?

MR. McMULLIN: It is, Your Honor.

MR. PHILLIPS: It is, Your Honor, and solely for purposes of the record, I think the district attorney will agree with me, although it is not included -- included in the written aspects of the plea agreement, I think the district attorney has agreed that they will not file any motion to depart from those recommendations.

MR. McMULLIN: Yes, Your Honor. My full recommendation is contained in that document.

THE COURT: Yes, that's implicit or implied in there, there will not be -- he'd have an awful tough time filing a notice of depart, and I believe -- *was there some talk about a request to impose the habitual criminal acts on the other counts at all?*

MR. McMULLIN: *Yes*.

THE COURT: *That would not be entertained as well under these plea negotiations*.

MR. McMULLIN: That's correct, and I'm not even sure it would be legally possible. Mr. Thomas?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You heard the plea agreement that I read. Is that your understanding of the plea agreement?

14

THE DEFENDANT: Yes, Your Honor.

Petitioner's Exh. 44, pp. 11-12 (emphasis added).

The "Defendant's Acknowledgment of Rights and Entry of Plea" form signed by petitioner contains a specific warning about the Habitual Criminal Act in paragraph 4. After reciting the potential sentences that could be imposed for the 11 counts in the information to which petitioner had agreed to plead guilty, the form states: "I further understand that if I am subject to being sentenced pursuant to the Habitual Criminal Sentencing Act, any term of imprisonment imposed may be doubled or tripled by the court, depending upon whether I have one or more prior felony convictions."

In addition to the standard printing on the form, handwriting appears on the printed form above the statement regarding the Habitual Criminal Sentencing Act. The various crimes charged in the Kidnapping Case are listed with potential sentences and that listing follows the printed statement: "I understand from my discussions with my attorney, and have been advised by the Court, that in addition to the court costs the following statutory penalties may be imposed against me . . . ." Petitioner's Exh. 14. The penalties listed for the offenses subject to sentencing under the KSGA plainly show that both Phillips and ADA McMullin believed petitioner had prior felony convictions. For instance, the listed statutory penalty for Count 10, the burglary of the Kindred home, was 11 to 34 months. That offense was a severity level 7 person felony. The sentencing range of 11 to 34 months covers criminal history up to three prior felonies. K.S.A. § 21-4705.

15

Due to petitioner's belief that he was innocent, petitioner would not have pled guilty and would have insisted on going to trial in the Kidnapping Case except for Phillips telling him that he would be subject to sentencing under the Habitual Criminal Act.  Hearing Transcript, pg. 69.

On December 21, 1994, Judge Rebecca Pilshaw sentenced petitioner to prison for 13 months in the Braley Burglary Case. Petitioner's Exh. 8 and 45.  On December 21, Judge Pilshaw also sentenced petitioner in the Kidnapping Case.  Judge Pilshaw disregarded the prosecutions' plea agreement recommendation in the Kidnapping Case and sentenced petitioner to a controlling term of imprisonment of not less than 30 years nor more than life imprisonment on the pre-KSGA charges for the Haskard Kidnapping and the Racer Kidnapping.  She sentenced petitioner to a controlling term of 30 months imprisonment on the KSGA charges for the Phares' theft, the Drowatsky theft, and Kindred burglary and theft.  The 30-month KSGA sentence was ordered served consecutively to the pre-KSGA sentence of 15 years to life. The sentence in the Kidnapping Case was ordered served consecutively to the sentence in the Burglary Case. Petitioner's Exh. 16 and 45.  In sum, petitioner's combined sentence was 13 months in prison, followed by 30 years to life in prison, followed by 30 more months in prison.  Although petitioner had several convictions in New York and one in Kansas from 1980 to 1993, the convictions were all misdemeanors. Petitioner's Exh. 7 and 15.  Petitioner's only prior felony conviction at the time he entered his guilty plea was in the Braley Burglary Case.

<u>II.  *Standard of Review and Conclusions of Law*</u>:

Petitioner argues that he received ineffective assistance of counsel from Mr. Phillips. Under *Strickland v. Washington*, 466 U.S. 668 (1984), the standard for attorney performance is that of reasonably effective assistance.  *Id*. at 687 (citing *Trapnell v. United States*, 725 F.2d 149, 151-152 (2d Cir. 1983).  First, the defendant must demonstrate that the counsel's performance was deficient, which requires that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment.  *Id*.  Second, the defendant must prove that the deficient performance prejudiced the defense.  *Id*.  "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Id*.

In *Hill v. Lockhart*, 474 U.S. 52 (1985), the Court held that the two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel.  Specifically, the first half of the test is a restatement of the standard of attorney competence set forth in *Tollett v. Henderson*, 411 U.S. 258 (1973) and *McMann v. Richardson*, 397 U.S. 759 (1970).  The second element of "prejudice" focuses on whether the ineffective performance "whether counsel's affected the outcome of the plea process.  "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Hill*, 474 U.S. at 59.

The KSGA took effect on July 1, 1993.  The KSGA changed sentencing under the Kansas Criminal Code from an indeterminate system to a determinate system based on an offender's criminal history and the severity level prescribed for every offense in the Code. K.S.A. § 21-4701 *et. seq*.  The KSGA applies for offenses committed on or after July 1, 1993.

17

Additionally, the Habitual Criminal Act was amended effective July 1, 1993 to provide that it did not apply to crimes committed on or after July 1, 1993.  Kan. Sess. L. ch. 239, § 235 (1992); Kan. Sess. L. ch. 291, § 180 (1993).  The Habitual Criminal Act continued to apply to offenses committed before July 1, 1993.

For petitioner's charges in the Haskard Kidnapping and the Racer Kidnapping, it appears that petitioner was not subject to sentencing under the Habitual Criminal Act.  Petitioner's only prior felony conviction at the time of the Kidnapping case was his plea of "guilty" in 1994 for the Braley Burglary Case.  However, the Braley Burglary Case conviction could not be used to invoke the Habitual Criminal Act because it did not precede in time the commission of the kidnapping and robberies of the Haskards in 1992 and Racer in 1993.  *See State v. Lohrbach*, 217 Kan. 588, 591-92 (1975) (holding that the Habitual Criminal Act may only be invoked where a prior felony conviction preceded in time the present conviction for which defendant is being sentenced).

After examining the record, Phillips' representation of defendant was deficient because he relied on information provided by the prosecutor and did not conduct an independent investigation to determine whether petitioner was subject to the Habitual Criminal Act.  Phillips advised petitioner that he was indeed subject to the Act, which resulted in a prejudice to the defense.  Additionally, a reasonable probability exists that petitioner would have insisted on his right to a jury trial but for the erroneous and unreasonable legal advice given to him by Phillips.  Therefore, this court finds that the post-conviction rejection by the Kansas appellate courts of petitioner's claim of ineffective assistance of counsel was contrary to or an unreasonable application of *Hill v. Lockhart*, 474 U.S. 52 (1995), which held that the two-part test of

18

*Strickland v. Washington*, 466 U.S. 668 (1984) applies to challenges to guilty pleas based on the ineffective assistance of counsel.  For this reason, the court remands for a new trial.

IT IS ACCORDINGLY ORDERED this 15th day of May, 2007, that petitioner's motion for a writ of habeas corpus is granted.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE

19